IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN HARNER, | : |
|     Plaintiff, | : |
| | : |
| v. | :   Civil No. 2:19-cv-05031-JMG |
| | : |
| GRAPHIC PACKAGING INTERNATIONAL, INC., | : |
|     Defendant. | : |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                           April 16, 2021

      After almost fifteen years of employment with Defendant Graphic Packaging International, Inc. ("Graphic Packaging"), Plaintiff Steven Harner was fired for violating the company's attendance policy. Harner now claims that his firing violated the Americans with Disabilities Act (ADA) and the Pennsylvania Human Relations Act (PHRA). Before the Court is Defendant's motion for summary judgment. Since Plaintiff has failed to establish a *prima facie* case of employment discrimination, summary judgment will be granted in Defendant's favor.

**I.      BACKGROUND**

      On July 13, 2017, Harner was fired from his job as a sorter at Graphic Packaging. Def.'s Statement of Facts ¶¶ 5, 77, ECF No. 22-2 [hereinafter "DSOF"]; Pl.'s Resp. to Def.'s Statement of Facts ¶¶ 5, 82, ECF No. 25 [hereinafter "PRSOF"]. Harner held that job since 2003, when he was hired through the federal Work Opportunity Program. DSOF ¶ 3; *see also* PRSOF Ex. A, ECF No. 25-1.[1] During his time at Graphic Packaging, Harner accumulated nine attendance

---

[1] The Work Opportunity Program "encourage[s] employers (whenever possible) to hire and retain . . . individuals from segments of the population that experience higher than average rates of employment." PRSOF Ex. A, ECF No. 25-1. Harner does not allege that he was hired

point violations. DSOF ¶ 75; Pl.'s Counterstatement of Facts ¶ 18, ECF No. 26-1 [hereinafter "PCOF"]. Per company policy, the accumulation of nine points results in termination. DSOF ¶ 76; see also J.A. at 000095. When Harner skipped work on June 13, 2017, to tend to his injured elbow,[2] he gained his ninth point, which prompted his firing. DSOF ¶¶ 63, 75–77; PCOF ¶ 18.

Harner allegedly understood that he had permission to take a day off from work. PRSOF ¶ 58. Sometime before his June 13 absence, Harner spoke with his plant manager, James Jackmore. DSOF ¶¶ 56–58; PRSOF ¶¶ 56–58. Harner asked Jackmore if he could use a floating holiday to see a doctor for his elbow injury. DSOF ¶¶ 56–58; PRSOF ¶¶ 56–58. While Jackmore did not approve the request, he purportedly told Harner to "do what you have to do." DSOF ¶ 58; PRSOF ¶ 58. Harner took this as "assent for his request to go to his doctor's appointment." PRSOF ¶ 58. Jackmore denied making the comment. See Jackmore Dep. 100:16–101:2, ECF No. 22-4 [hereinafter "Jackmore Dep."].

Harner later appealed his termination by filing a grievance, the gist of which was that his final absence from work had been approved by a supervisor. DSOF ¶ 80; PRSOF ¶ 80. The grievance paperwork, which was completed by Harner's union president, claimed that "Steven has mental issues. He was told to get his injury checked out, not legal termination." PCOF ¶ 21; see also Jackmore Dep. 115:4–6. Graphic Packaging ultimately denied the grievance after holding a hearing. See Jackmore Dep. 122:21–123:3; see also DSOF ¶ 81; PCOF ¶ 26. Jackmore testified that Harner was not in attendance. Jackmore Dep. 111:18–112:20. Harner,

---

through the Work Opportunity Program because of his learning disability. Further, there is no record evidence that individuals with learning disabilities qualify under the Work Opportunity Program.

[2] Harner originally pleaded employment discrimination on the basis of his injured elbow and his learning disability. He has since withdrawn the claims related to his elbow injury. See Pl.'s Opp'n 2 n.1, ECF No. 26.

however, claimed that he was unaware of any such hearing. Harner Dep. 110:21–111:9, ECF No. 22-4 [hereinafter "Harner Dep."].

Harner now asserts that his firing amounted to employment discrimination under the ADA and PHRA. He brings "disparate treatment" and "failure to accommodate" claims, contending that he was fired because of his learning disability. Compl. ¶¶ 48–71, ECF No. 1.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is properly granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are material if they "might affect the outcome of the suit under the governing law." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute as to those facts is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248). "We view all the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Id.* (internal quotation marks and citation omitted).

The party moving for summary judgment must first "identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*,

776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

## III.   DISCUSSION

### A.   Burden-Shifting Analysis Under the ADA

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). "[A]n employer can unlawfully discriminate within the meaning of the ADA in two different ways . . . : (1) if the employer takes adverse action against a qualified individual with a disability and that decision was motivated by the individual's actual disability or the employer's belief that the individual had a disability (i.e. disparate treatment); or (2) if the employer fails to make reasonable accommodations for that individual." *Isley v. Aker Phila. Shipyard, Inc.*, 275 F. Supp. 3d 620, 626 (E.D. Pa. 2017) (internal quotation marks and citation omitted). Harner raises claims under both theories.[3]

Disability discrimination claims proceed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *See Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 270 (3d Cir. 2010). If the plaintiff carries this burden, the defendant must "offer evidence of a legitimate, nondiscriminatory reason for the action." *Id.* at 271 (internal quotation marks and citation omitted). Finally, the burden shifts back to the plaintiff to "show by a

---

[3] Harner brings identical claims under the PHRA. The PHRA and ADA mostly overlap. *See Isley*, 275 F. Supp. 3d at 626 n.6. But in 2008, Congress amended the ADA and broadened its definition of "disability." *See generally Gardner v. SEPTA*, 410 F. Supp. 3d 723, 735 (E.D. Pa. 2019). "[T]he PHRA has not been similarly amended." *Id.* at 734 n.5 (internal quotation marks omitted). In any event, because we find that Harner has not established a *prima facie* discrimination claim under the broader ADA, his claims under the stricter PHRA necessarily fail. *Id.* ("[B]ecause Plaintiff fails to establish he was disabled at a *prima facie* level under ADA (the broader post-amendment interpretation), he fails, *a fortiori*, under PHRA . . . .").

preponderance of the evidence that the [defendant's] explanation is pretextual." *Id.* (internal quotation marks and citation omitted).

      **B.**     ***Prima Facie* Case of Discrimination**

Harner's claims fail at the outset because he has not made out a *prima facie* case of discrimination. "[T]o establish a *prima facie* case, Plaintiff must show: (1) that he is a disabled person within the meaning of the ADA; (2) that he is otherwise qualified to perform the essential functions of his job with or without reasonable accommodation; and (3) that he suffered an adverse employment action because of his disability." *Gardner v. SEPTA*, 410 F. Supp. 3d 723, 734 (E.D. Pa. 2019) (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)). Graphic Packaging argues that Harner is not disabled as a matter of law. Harner counters that his learning disability "is apparent from basic interactions." Pl.'s Opp'n 13, ECF No. 26.

After a full period of discovery, Harner has failed to carry his threshold "burden of demonstrating that he has a disability under the ADA." *See Gardner*, 410 F. Supp. 3d at 734 (quoting *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000)). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). At a minimum, "major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, *learning*, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A) (emphasis added).[4]

---

[4]    As a result of the 2008 expansion of the ADA, "Congress expanded the statute's non-exhaustive list of 'major life activities' and declared that '[t]he definition of disability shall be construed in favor of broad coverage under this Act, to the maximum extent permitted by the terms of this Act.'" *Mills v. Temple Univ.*, 869 F. Supp. 2d 609, 620 (E.D. Pa. 2012) (quoting Pub. L. No. 110–325, §§ 2(b)(1)–(6), 3(2)(a), § 4(a), 122 Stat. 3553, 3555).

Harner claims that his learning disability "substantially limited a wide variety of his major life activities, especially as compared to most people in the general population." Pl.'s Opp'n 12, ECF No. 26. But this statement is unsubstantiated by record evidence. Indeed, Harner testified that: (1) his learning impairment does not affect his "ability to do anything on a daily basis" (Harner Dep. 87:16–23); (2) his impairment did not hinder his work at Graphic Packaging (*id.* at 88:2–4); and (3) he has no records regarding his impairment (*id.* at 88:12–14).

In support of his argument, Harner cites only the grievance paperwork, filed after his termination, that references his "mental issues." *See* Pl.'s Opp'n 13, ECF No. 26; *see also* PCOF ¶ 21. Harner has not presented any further elaboration from the union official who authored the paperwork, or any evidence whatsoever, that provides support for the disability alleged here. Even when viewed in the light most favorable to Harner, this lone document from the union says nothing about Harner's ability to perform major life activities, nor does it indicate that Graphic Packaging regarded Harner as disabled. That is because "'[s]tray remarks from co-workers, even those implicating an employee's disability . . . are not alone sufficient to raise the critical inference' on summary judgment." *Wilson v. Graybar Elec. Co. Inc.*, No. 17-3701, 2019 WL 1229778, at *14 (E.D. Pa. Mar. 15, 2019) (quoting *Anderson v. Radio One, Inc.*, No. 09-194, 2010 WL 3719088, at *10 (E.D. Pa. Sept. 20, 2010)). In other words, the grievance paperwork implies, at most, that Harner's union president perhaps perceived Harner to have a mental health condition, but not that Harner was substantially limited in any major life activity.

The record before us is devoid of any medical documentation, testimony, or other evidence regarding Harner's learning disability.[5] Instead, Harner's case rests largely on

---

[5] Jackmore, the only other witness to testify in this case, indicated that Harner was not limited in his job in any way. *See, e.g.*, Jackmore Dep. 40:7–42:4.

6

counsel's representations that the learning disability is "apparent to the naked eye when you meet [Harner]." Pl.'s Opp'n 12, ECF No. 26; *see also id.* ("Plaintiff clearly has difficulty comprehending and processing information, and thus expressing himself verbally."). This, too, does not create a genuine issue of material fact. *Cf. Plouffe v. Cevallos*, No. 10-1502, 2016 WL 1660626, at *6 (E.D. Pa. Apr. 27, 2016) ("[A]rguments made in briefs 'are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion.'" (quoting *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109–10 (3d Cir. 1985)).

Counsel further argues that a "jury should have the opportunity to evaluate Plaintiff" (Pl.'s Opp'n 11, ECF No. 26), but "[i]t is not for a jury, or the Court, to meet Plaintiff's burden for him. At summary judgment, Plaintiff cannot rely on unsupported allegations; he must go beyond pleadings and provide some evidence that would show a genuine issue exists for trial." *Gardner*, 410 F. Supp. 3d at 738. Harner has not met this burden. In the absence of other documentary or testimonial evidence, the grievance paperwork alone does not establish Harner's disability under the ADA or give rise to a genuine issue of material fact.

In sum, Harner raises no genuine issues of material fact that would permit findings that he: (1) has a mental impairment that substantially limits one or more major life activities; (2) has records of such an impairment; or (3) is regarded as having such an impairment. As a result, his discrimination claims fail as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, Graphic Packaging's motion for summary judgment is granted. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge
